## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Bobby Furman, )<br>)<br>    Plaintiff, )<br>)<br>    vs. )<br>)<br>Carolyn W. Colvin, Acting, )<br>Commissioner of Social Security, )<br>)<br>    Defendant. )<br>_____) | Civil Action No. 4:15-5066-RMG<br><br><br><br><br>**ORDER** |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain relief from the final decision of the Commissioner of the Social Security Administration denying him Disability Insurance Benefits ("DIB") under the Social Security Act. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on January 9, 2017, recommending that the Commissioner's decision be reversed and remanded to the agency because of the Administrative Law Judge's failure to consider the applicability of Listing 12.05(c). (Dkt. No. 23). The Commissioner has filed a reply indicating that she will not file objections to the R & R. (Dkt. No. 25). As explained more fully below, the Court reverses the decision of the Commissioner and awards benefits under Listing 12.05(c).

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection has been made, and may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme of the Social Security Act is a limited one. Section 405(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is limited, "it does not follow, however, that the findings of the administrative agency are mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings." *Vitek*, 438 F.2d at 1157-58.

Under the five step sequential process under the Social Security Act, a claimant may establish his right to disability benefits at Step Three if he can demonstrate he meets the requirements for one of the listed impairments. 20 C.F.R. §404.1520(a)(4)(iii). Listing 12.05(c), which relates to a disability claim based upon mental retardation, provides that a claimant may establish his disability by demonstrating the onset of the impairment before age 22 and the presence of a "valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

20 CFR pt. 404, subpt. P, app. 1, 12.05(c). The Fourth Circuit has recognized mental retardation as a "life long condition" and "in the absence of any evidence of change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ has remained relatively constant." *Luckey v. U. S. Dept. Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989). Any finding by the Commissioner that a claimant "suffers from a severe combination of impairments . . . establish[es] the second prong of 12.05(c)." *Id.* at 669. Furthermore, the Commissioner "may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met." *Id.*

## Factual Background

Plaintiff's application for disability benefits has languished in the administrative processes of the Social Security Administration for a decade. Plaintiff first applied for DIB in 2006, nearly eleven years ago. The initial administrative processing of this claim took more than three years, with an ALJ decision ultimately finding that the Plaintiff was not disabled. The decision was reversed and remanded by the Appeals Council for further review. A second ALJ decision was issued in 2011, again finding that the Plaintiff was not disabled. The Appeals Council again reversed the ALJ decision and directed that on remand the ALJ would, among other things, (1) "attempt to obtain another mental status consultative examination" that would include IQ testing; (2) evaluate further Plaintiff's mental impairment; and (3) obtain medical source statements concerning "what the claimant can do despite his impairments." Tr. 219. The Appeals Council further took the highly unusual step of directing that the case on remand be assigned to another ALJ. Tr. 220.

The record on remand included from earlier hearings the results of multiple standardized

tests administered to Plaintiff when he was in the public schools. This included a full scale IQ of 63 on the Wechsler Intelligence Scale administered in 1977, when the Plaintiff was seven years of age, and a full scale IQ of 64 on the Wechsler Intelligence Scale administered in 1986, when Plaintiff was sixteen years old. Tr. 780, 784, 876. Psychological evaluations of Plaintiff by school psychologists confirmed the validity and reliability of the IQ test results. One psychologist, in a 1986 report, concluded that Plaintiff fell into the Educable Mentally Handicapped range based on "mental ability" and "performance skills." Tr. 786. Another psychologist reached the same conclusion in a 1983 evaluation, finding that the testing appeared commensurate with Plaintiff's intellectual abilities. Tr. 788. Based on these findings, Plaintiff was maintained in special education programs for the mentally handicapped through most of his public school attendance until he dropped out in the ninth grade.[1]

The Social Security Administration, as part of the processing of Plaintiff's disability application, sent the claimant to a psychologist, Trina D. Jackson, Psy.D., for testing, including IQ testing, in 2010. Dr. Jackson reported that she was unable to obtain a reliable result from the standardized tests because of Plaintiff's "questionable effort at testing." She stated that "malingering cannot be ruled out at this time." Tr. 884. She further observed, however, that Plaintiff did appear to have "legitimate difficulties" with the testing. Tr. 883. In fact, she concluded that "it is entirely likely that he suffers from some cognitive impairment given his

---

[1] The reports of the two school psychologists constitute opinions by an examining provider and are entitled to deference under the Treating Physician Rule. Since these psychologists also participated in the approval of Plaintiff's instructional program as an Educable Mentally Handicapped student, they may well have been treating providers as well. 20 CFR § 404.1527(c). In either instance, these opinions are entitled to considerable weight and deference. No expert opinions were provided challenging the validity of these test results or psychological reports.

history of special education and long-standing seizure disorder, the extent is unclear at this time." *Id.*

Despite the fact that the Appeals Council directed the ALJ on remand to obtain another mental status examination to evaluate the claimant's IQ, the ALJ, apparently interpreting the directive as a suggestion, declined to order another evaluation. Instead, the ALJ concluded another evaluation was "unwarranted" because of the Plaintiff's work history and other factors. Tr. 20, 219. The ALJ did note, and did not question, the validity of Plaintiff's school testing showing a full scale IQ of 64. Tr. 20.

The record also contained reports from two of Plaintiff's treating physicians, Dr. Thomas Stanley, a neurologist who treated Plaintiff for seizure disorder, syncope and dizziness, and Dr. Hector Esquivel, a long-serving family physician. Dr. Stanley provided opinions that Plaintiff's "dizziness and syncope preclude him from sedentary work" and that he was incapable of managing his own care without the assistance of his wife. Tr. 723, 775. Dr. Esquivel reached a similar conclusion, stating that due to his seizure disorder "he cannot work on a full time basis." Tr. 800. Although the Appeals Council directed the ALJ to obtain "medical source statements about what the claimant can do despite his impairments," the record contains no evidence that any follow up with Plaintiff's treating physicians was undertaken by the ALJ. Tr. 219.

After conducting a third administrative hearing in this disability claim on May 22, 2014, the ALJ issued an order dated June 27, 2014, finding that Plaintiff suffered from a number of severe impairments, including seizure disorder, syncope, sinus node dysfunction (status post-pacemaker), and borderline intellectual functioning. Tr. 18. At Step Three of the sequential process, the ALJ addressed a number of potential listings and concluded that Plaintiff failed to

satisfy the requirements of any listing. The ALJ did not, however, address Listing 12.05, relating to disability resulting from mental retardation. The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work and, on the basis, ultimately determined that he was not disabled under the Social Security Act. Tr. 21-25.

The Appeals Council conducted no further review on this third ALJ decision and this became the final decision of the Commissioner. The case was thereafter timely appealed to this Court on December 15, 2015. The Magistrate Judge issued a R & R on January 9, 2017, recommending that this Court reverse and remand the ALJ's decision because of the ALJ's failure to address Plaintiff's eligibility for disability under 12.05(c). Dkt. No. 23 at 8-11. This matter is now before the Court on this appeal of the denial of Plaintiff's disability claim.

## Discussion

Despite a decade of administrative processing of this claim, the Social Security Administration appears to have overlooked the most obvious and compelling claim of Plaintiff for disability based upon his well-documented history of mental retardation and sub-normal IQ testing. Simple adherence to the clear language set forth in Listing 12.05(c) and the Fourth Circuit's plainly announced standards in the 1989 decision of *Luckey v. U.S. Department of Health and Human Services* should have produced a far speedier and different result. Under 12.05(c), a claimant may satisfy the requirements for the listing by showing he had (1) the onset of the impairment before age 22; (2) a "valid . . . full scale IQ of 60 through 70;" and (3) "a physical or other mental impairment imposing an additional and significant work related limitation of function."

Each of the requirements of Listing 12.05(c) is clearly established by this record and there

is not substantial evidence in the record to the contrary. First, the record establishes that the onset of Plaintiff's impairment was present before age 22. Indeed, the record shows documented evidence of mental retardation as early as age seven. Second, Plaintiff has produced in the record two valid full scale IQ test results between 60 and 70 and supporting reports by licensed psychologists confirming the validity and reliability of those results. Tr. 770-789. These test results meet every requirement for a valid IQ test under Social Security Act regulations. 20 CFR pt. 404, subpt. P, app. 1, 1200(d)(6).

The Administrative Law Judge made much of the report of Dr. Jackson in which she was unable to obtain a reliable IQ test result because of the Plaintiff's apparent lack of effort and possible malingering. Tr. 23, 883-884. The ALJ appears to interpret Dr. Jackson's report as an indication that Plaintiff lacks a genuine mental impairment. To the contrary, Dr. Jackson recognized that Plaintiff experienced "legitimate difficulties" with portions of the test and concluded that it was "entirely likely" he suffered from some cognitive impairment. The only issue for Dr. Jackson was the extent of that impairment, which she said was "unclear at this time." Tr. 883-884.

With the ALJ's decision to disregard the directive of the ALJ to obtain another mental status evaluation of Plaintiff, the Court is left with two valid and unchallenged IQ test results from the Plaintiff's minority. The Fourth Circuit in *Luckey* made it clear that since mental retardation is a lifelong condition, a reviewing court must "assume[] that the claimant's IQ had remained relatively constant" unless there is evidence in the record of a change in the claimant's "intelligence functioning." 890 F.2d at 668. The record contains no such evidence and the unchallenged IQ results satisfy the second requirement of 12.05(c).

Third, the record demonstrates that Plaintiff has satisfied the 12.05(c) requirement that he show the presence of "a physical or other mental impairment imposing an additional and significant work-related limitation of function." The ALJ found at Step Two of the sequential process that Plaintiff suffered from multiple physical impairments, including a seizure disorder, syncope and cardiac abnormalities. Tr. 18. The Fourth Circuit in *Luckey* held that where the Commissioner found that a claimant suffers from another severe impairment, the requirements of this portion of 12.05(c) is satisfied. 890 F.2d at 669.

The ALJ made repeated reference to Plaintiff's work history prior to his disability application, essentially arguing that such a work history entitles the Commissioner to ignore validly administered subnormal IQ tests and a claimant's satisfaction of the other 12.05(c) requirements. This approach, however, seriously misreads settled authority in this circuit established by *Luckey*. In *Luckey,* the claimant had a 23-year work history, and the Commissioner argued that this rebutted the Plaintiff's satisfaction of 12.05(c) requirements. The Fourth Circuit held, however, that the Commissioner "may not rely upon previous work history to prove non-disability where the section 12.05(c) criteria are met. When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant

-8-

to work despite the handicap." *Id.* [2]

In sum, the record clearly establishes Plaintiff's satisfaction of each of the 12.05(c) elements, which entitles him to an award of benefits as a matter of law. The only question before the Court is whether this Court should award benefits or remand the matter to the agency for further action.

## Plaintiff's Remedy

The Social Security Act provides a district court on appeal the authority to affirm, modify or reverse the decision of the Commissioner "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). While it has been this Court's practice generally to remand reversed disability decisions to the Commissioner for further administrative action, it is well settled that a district court may reverse without remand where such remand would serve no useful purpose and the claimant is entitled to judgment as a matter of law on the record before the district court. *Breeden v. Weinberger*, 493 F. 2d 1002, 1012 (4th Cir. 1974). Based on the Court's findings and conclusions set forth above, any further delay in the award of benefits to

---

[2] The Commissioner references in briefing before the Magistrate Judge the Fourth Circuit decision in *Hancock v. Astrue*. 667 F.3d 470 (4th Cir. 2012) to support an argument that the agency was free to ignore valid IQ scores in the subnormal range of 60-70. Dkt. No. 19 at 25-26. This vastly over reads the holding in *Hancock*, where the ALJ in that case "discredited IQ scores." 667 F. 3d at 475. In this matter, there has been no challenge to the validity or reliability of Plaintiff's IQ scores, which were confirmed by two separate psychologists who evaluated Plaintiff. Their reports validated and confirmed that Plaintiff's actual intellectual functioning at the time mirrored the test results and these deficiencies were documented to exist before age 22. Since the ALJ here did not challenge, much less discredit, the validity of Plaintiff's earlier IQ testing and psychological evaluations, the Commissioner is not free to ignore those IQ test results. To interpret Listing 12.05 as suggested by the Commissioner would allow the Commissioner to ignore a claimant's entitlement to disability benefits when he has fully satisfied the plain language of 12.05(c). This interpretation would constitute an overruling of *Luckey*, which the *Hancock* court made no suggestion of its intention to overrule this significant and well-established precedent.

this clearly entitled claimant would exacerbate the injury already inflicted by the agency's protracted and unacceptable handling of this claim. Enough is enough. Justice is served by this Court's award of benefits.

### Conclusion

Based upon the foregoing, this Court reverses the decision of the Commissioner under Sentence Four of 405(g) and awards benefits.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

January 23, 2017
Charleston, South Carolina

-10-